# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **PHILLIP LESLIE MAXON #19708,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:22-cv-00367 |
| ) | Judge Trauger |
| **STONECREST HOSPITAL,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

Plaintiff Phillip Maxon, a pretrial detainee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and two applications to proceed as a pauper. (Doc. Nos. 5, 9.) The complaint is before the court for initial review. As explained below, it appears that the plaintiff fails to state a claim because he has not named a defendant that acted under color of state law for purposes of Section 1983. Therefore, to proceed in this case, the plaintiff must file an amended complaint by following the instructions in the order that accompanies this memorandum.

**I.    Application to Proceed as a Pauper**

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's first application to proceed as a pauper reflects that he cannot pay the full filing fee in advance. (Doc. No. 5 at 3.) Accordingly, this application will be granted, and the filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b). The plaintiff's second application (Doc. No. 9) will be denied as moot.

**II.   Initial Review**

The court must determine if the complaint is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.

§ 1915(e)(2)(B). And because the plaintiff is representing himself, the court must liberally construe the complaint and hold it to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Allegations

This case concerns alleged improper medical care provided to the plaintiff at Stonecrest Hospital. For the purpose of initial review, the court considers the complaint (Doc. No. 1) and three supplemental notices (Doc. Nos. 6, 8, 10) together. Liberally construing these filings, the plaintiff alleges as follows:

The plaintiff was taken to Stonecrest Hospital after being shot by police officers on June 6, 2021.[1] (Doc. No. 1 at 5; Doc. No. 6 at 2.) That evening, the plaintiff came out of surgery and was placed in the emergency room (ER). (Doc. No. 1 at 5.) He saw a man in the ER who the plaintiff describes as his "enemy" and a "major drug dealer." (*Id.*; Doc. No. 6 at 2.) This man was working with an ER attendant and lab personnel to take drugs from the lab. (Doc. No. 1 at 5; Doc. No. 6 at 2; Doc. No. 8 at 1; Doc. No. 10 at 1.) The man told the attendant that the plaintiff was his enemy, and the attendant looked up the plaintiff's medical records to find that the plaintiff is "allergic to tetanus." (Doc. No. 10 at 1.) The man then told the attendant to put methamphetamine in the plaintiff's IV bag and give the plaintiff a tetanus shot in his left leg, and the attendant did so. (Doc. No. 6 at 2; Doc. No. 8 at 1.) The plaintiff's enemy, meanwhile, took a "large bag of drugs" from the lab. (Doc. No. 8 at 1.) The plaintiff saw this occur and informed an off-duty police officer, who arrested the man and a lab technician. (*Id.*)

---

[1] The complaint lists this date as June 6, 2022, but that is not possible, as the complaint was received in this court on May 19, 2022. (Doc. No. 1 at 1.) The cover letter accompanying the complaint, moreover, states that the one-year statute of limitations for this case expired on June 6, 2022. (Doc. No. 1-1 at 1.) The court therefore assumes that the alleged events giving rise to the case occurred on June 6, 2021.

The plaintiff was awake for 7 days and nights following this incident. (Doc. No. 8 at 1.) He was placed in a room next to the ER. (Doc. No. 10 at 1.) When the plaintiff finally slept and woke up, there was no one in his room; the attendant who should have been there was in the hallway talking to his girlfriend. (Doc. No. 1 at 5; Doc. No. 6 at 1–2; Doc. No. 8 at 1–2.) There was a large tube in the plaintiff's throat, and the plaintiff took it out. (Doc. No. 1 at 5.) The attendant returned to the room and told the plaintiff that the tube supplied oxygen to his body. (*Id.*; Doc. No. 6 at 2.) The plaintiff unsuccessfully attempted to put the tube back in his throat. (Doc. No. 6 at 2.) A surgeon instructed the attendant to give the plaintiff supplemental oxygen through his nose, but the plaintiff has trouble breathing through his nose. (Doc. No. 10 at 2.) As a result of this incident, the plaintiff suffered "a large amount of brain damage." (Doc. No. 1 at 5.)

At some point, the plaintiff was switched from a liquid diet to a normal diet. (Doc. No. 8 at 2.) The plaintiff coughed up "half a bowl" of phlegm and used a breathing apparatus to help defeat pneumonia. (*Id.*) The "throat nurse" got jealous of the plaintiff because the nurse had to use antibiotics when he had pneumonia. (*Id.*) This nurse then switched the plaintiff back to a liquid diet, causing the plaintiff to lose strength. (*Id.*) After the plaintiff complained for several days, the nurse switched the plaintiff back to a normal diet. (Doc. No. 10 at 3.)

One day, a nurse wheeled the plaintiff's bed from his room by the ER to a higher floor. (Doc. No. 8 at 2–3.) The nurse twirled the bed around several times before taking the plaintiff to another floor. (*Id.* at 3.) When the plaintiff arrived, the man who worked on the higher floor got nervous, took 4 or 5 pills from a prescription bottle, and then told the nurse to take the plaintiff to another room. (*Id.* at 3.) The plaintiff's head was placed in "some kind of x-ray machine" without his permission, and then the nurse returned the plaintiff to his room next to the ER. (*Id.*)

3

The plaintiff remained in a hospital bed for 2 weeks before physical therapists helped him into a chair. (Doc. No. 6 at 1.) During those 2 weeks, the plaintiff attempted to move from the bed to a chair on his own several times, but a nurse prevented him from doing so. (Doc. No. 10 at 1.) By the time he was helped out of bed, the plaintiff had experienced deep body trauma, including arthritis in his fingers. (*Id.*; Doc. No. 6 at 1; Doc. No. 8 at 1.) This trauma could have been avoided if the plaintiff had been helped out of bed daily beginning the day after his surgery. (*Id.*)

B.     **Legal Standard**

To determine if the complaint states a claim, the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

C.     **Analysis**

The plaintiff brings this case under Section 1983. (Doc. No. 1 at 1.) Section 1983 allows individuals to bring civil claims based on violations of "the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). In other words, "Section 1983, by its own terms, applies only to those who act 'under color' of state law." *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2020).

The only defendant in this case is Stonecrest Hospital (the Hospital). (Doc. No. 1 at 1–2.) But "[a] hospital is not a 'person' within the meaning of [Section] 1983." *Bumpas v. Matthew*

*Nixon*, No. 3:08-0977, 2009 WL 3048562, at *4 (M.D. Tenn. Sept. 17, 2009). And to the extent the plaintiff meant to bring this case against a collection of staff members at the Hospital, the court notes that a group of employees is also not a "person" for the purpose of Section 1983. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) (holding that prison "medical departments are not 'persons' under § 1983").

If the plaintiff meant to bring this case against individual staff members at the Hospital, then he must demonstrate that the staff members were acting under color of state law. The plaintiff alleges that he was taken to the Hospital after being shot by police, so the court infers that police took him there under their custody. "[S]tates must provide medical care to those in custody." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) (citing *Estelle*, 429 U.S. at 103). In some circumstances, therefore, a private health care provider fulfilling this obligation on behalf of the state may be considered a "state actor" for Section 1983 purposes. *See id.* at 595–96 (discussing *West v. Atkins*, 487 U.S. 42 (1988)). But "private parties do not automatically become 'state' actors simply by caring for prisoners." *Phillips v. Tangilag*, 14 F.4th 524, 533 (6th Cir. 2021). Rather, courts consider medical providers to be state actors where "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020) (internal citations and quotation marks omitted).

"[T]he mere fact that a hospital is licensed by the state is insufficient to transform it into a state actor for purposes of section 1983." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citations omitted). Likewise, "a hospital with an emergency room that generally must treat all patients who seek care for life-threatening conditions" does not "become a state actor" just because "a prisoner gets rushed there for a medical emergency." *Phillips*, 14 F.4th at 533 (citing *Rodriguez*

5

*v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827–28, 831 (7th Cir. 2009)). And if a private doctor at a hospital happens to treat a prisoner, does not have a contractual relationship with the state, and decides on the prisoner's treatment free from the state's influence, then that doctor is likely not a state actor. *See id.* (discussing *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009)).

Here, the plaintiff's allegations reflect that the staff members at Stonecrest Hospital simply happened to treat the plaintiff when he was taken to the Hospital for emergency treatment. Therefore, the court has no basis to infer that these hospital employees had such a close nexus with the state that their actions can be fairly attributed to the state. And with no alleged violations by a person acting under color of state law, the plaintiff fails to state a claim under Section 1983.

Rather than dismiss the case, however, the court will allow the plaintiff an opportunity to file an amended complaint. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). The amended complaint should name one or more proper defendants to a Section 1983 case and provide allegations sufficient to infer that the defendants acted under color of state law.

### III. Conclusion

For these reasons, the plaintiff will be granted pauper status and the court will give him an opportunity to file an amended complaint. If the plaintiff does not file an amended complaint within 30 days of the date this memorandum and order is entered on the docket, the court will dismiss this case for failure to state a claim.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge